IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2025

### STATE OF TENNESSEE v. FORREST DURHAM

**Appeal from the Circuit Court for Henderson County**
**No. 23-195-2     Donald H. Allen, Judge**

_____

### No. W2024-00721-CCA-R3-CD

_____

Pursuant to a negotiated plea agreement, the Defendant, Forrest Durham, pleaded guilty to six counts of aggravated statutory rape. Following a sentencing hearing, the trial court imposed an agreed-upon six-year sentence, suspended to supervised probation. The Defendant appeals, arguing that the trial court erred by denying his request for judicial diversion and by requiring him to register as a sex offender. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

STEVEN W. SWORD, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Nicholas Lee Surrat, Savannah, Tennessee, for the appellant, Forrest Bryce Durham.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin L. Barker, Assistant Attorney General; Jody Pickens, District Attorney General; and Joshua B. Dougan, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.     FACTUAL AND PROCEDURAL HISTORY

On January 27, 2023, a Henderson County grand jury returned an indictment charging the Defendant with six counts of rape in relation to events occurring between July 1, 2020, and August 18, 2020. A superseding indictment followed on August 1, 2023, charging the Defendant with six counts of aggravated statutory rape. Pursuant to a negotiated plea agreement, the Defendant pleaded guilty as charged in the superseding indictment on August 29, 2023.

## A. PLEA HEARING

The State provided a summary of the facts giving rise to the Defendant's charges at the Defendant's guilty plea submission hearing. According to this summary, the Defendant engaged in consensual sexual intercourse with the victim, E.R.,[1] on six occasions between July and August of 2020. During this time, the Defendant was twenty-seven years old and the victim was fifteen years old. In August of 2020, the victim's aunt, who was married to the Defendant, learned of the sexual relationship between the Defendant and the victim when she, the victim, and the Defendant each contracted the same sexually transmitted disease. A referral to the Department of Children's Services was made in September of 2022, and the victim described her relationship with the Defendant in a forensic interview. The Defendant testified the State's summary was substantially true and pleaded guilty as charged. The trial court accepted the Defendant's plea and scheduled a sentencing hearing to determine whether to grant judicial diversion and whether to order the Defendant to register as a sex offender.

## B. SENTENCING HEARING

At the March 28, 2024, sentencing hearing, the State introduced a copy of the Defendant's presentence report, which indicated no prior convictions except for a traffic violation committed in 2012. The State also introduced the report from the Defendant's psychosexual risk assessment, which concluded that the Defendant presented a moderate to moderate-high risk of reoffending and recommended that he participate in sex-offender-specific treatment.

The victim testified that she first met the Defendant when she was eleven years old, following his marriage to her aunt. The victim stated that the Defendant began making sexual advances towards her in 2020 at a family party celebrating the Fourth of July while the two swam together in a pool. She described their ensuing sexual encounters as consensual. The victim testified that the nature of her relationship with the Defendant came to light when she, her aunt, and the Defendant each contracted the same sexually transmitted disease. She averred that she contracted two sexually transmitted diseases as a result of her sexual intercourse with the Defendant. Though the victim disclosed the nature of her relationship with the Defendant to her aunt in 2020, she explained that her family wished to "keep this all a secret" and did not immediately report the Defendant to law enforcement. The victim's aunt ultimately made a report to the Department of Children's Services in 2022, shortly after the Defendant began a relationship with another

---

[1] Pursuant to this Court's policy of protecting the identities of minor victims of sexual offenses, we refer to the victim by her initials.

woman. The victim later described her sexual encounters with the Defendant and the nature of their relationship in a forensic interview.

The victim testified that she had attended more than a year's worth of counselling as a result of her relationship with the Defendant. She also stated she believed the Defendant had taken advantage of her "abandonment" and "self-esteem issues" by initiating a sexual relationship with her. The victim believed that requiring the Defendant to register as a sex offender was necessary to keep him from initiating similar relationships with children in the future.

Melissa Waltrip, the Defendant's girlfriend, testified that the Defendant had lived with her and her four children in Decaturville, Tennessee, for approximately one and a half years. Ms. Waltrip stated that three of her children were minors. She described the Defendant's relationship with her children as "amazing" and said that her adult son had previously expressed a desire for the Defendant to adopt him. Ms. Waltrip denied that the Defendant had any problems with alcohol or drug abuse and testified that she believed the Defendant was "truly remorseful" for his offenses. Ms. Waltrip also noted that she and the Defendant were both employed by Golden Rule Mechanical in Milan, Tennessee.

The Defendant testified that he initiated the sexual relationship with the victim, which he described as consensual. He denied using force or coercion at any time against the victim. The Defendant stated that he had not had any contact with the victim since the victim reported her relationship with the Defendant to her aunt. He also noted that he was unlikely to have any contact with the victim in the future, as she had since moved out-of-state.

The Defendant testified that he regretted his relationship with the victim and stated he would do "anything and everything" to prove that "it's never going to happen" again. He recalled submitting to a psychosexual risk assessment and noted that he had been surprised to learn the results of this assessment indicated that he presented a moderate to moderate-high risk of reoffending and that he showed an "above normal sexual visual interest" in "young children." However, he stated he had since sought counseling to address these issues. The Defendant apologized for his offenses and noted that his behavior since they came to light indicated his remorse and amenability to correction. He noted that he lived with Ms. Waltrip and helped her parent her four children. He also stated he had partial custody of his three-year-old daughter. The Defendant testified that he had committed no further sexual offenses and averred that there had never been any "concerns" regarding his behavior towards either his daughter or Ms. Waltrip's children. He requested that the trial court grant him judicial diversion and that he not be required to register as a sex offender.

The State argued that the results of the Defendant's psychosexual risk assessment, the circumstances of the case, and the victim's testimony indicated that a grant of judicial diversion would be inappropriate and that ordering the Defendant to register as a sex offender was necessary. The Defendant responded that he had a strong support system from his relationships with Ms. Waltrip, her children, and his daughter, which would "hold him accountable" if he reoffended. He further noted his belief that his behavior since his relationship with the victim became public indicated that a grant of judicial diversion would be proper, specifically identifying his cooperation with the psychosexual risk assessment, his acknowledgments of his guilt, his expressions of remorse, his lack of any prior criminal history, his employment, and his good behavior while released on bond. The trial court took the matter under advisement and continued it to a later date.

## C. ENTRY OF SENTENCE

On April 16, 2024, the trial court, after considering the presentence report, the results of the Defendant's psychosexual risk assessment, the purposes and principles of sentencing, the arguments of counsel, the evidence presented at the hearing, the nature and characteristics of the criminal conduct involved, the mitigating and enhancement factors, the relevant statistical information provided by the Administrative Office of the Courts, the Defendant's confession, and his potential for rehabilitation and treatment, denied the Defendant's request for judicial diversion, imposed an effective sentence of six years with an opportunity to serve the sentence on supervised probation, and ordered the Defendant to register as a sex offender.

In its consideration of the Defendant's request for judicial diversion, the trial court found that the Defendant had "basically no criminal record" and was amenable to correction based on his presentence report. However, the trial court further found that the circumstances of the offense weighed "very heavily" against a grant of judicial diversion. The trial court accredited the victim's testimony and found that the Defendant had taken advantage of the victim's vulnerability and age in initiating a sexual relationship. From its review of the Defendant's psychosexual risk assessment, the trial court found that the Defendant had "various types of intercourse" with the victim, including "fellatio, sexual intercourse, [and] anal intercourse," which resulted in the victim's contracting two sexually transmitted diseases over the course of two months. The trial court emphasized that the psychosexual risk assessment's conclusion that the Defendant presented a "moderate to high risk to reoffend" indicated that the social history and the physical and mental health factors weighed against a grant of diversion. The risk of the Defendant's reoffending also informed the trial court's conclusion that denying diversion would serve to deter the Defendant and others from future offenses and that the interests of justice would not be served by granting diversion because "this is not the type of behavior that we expect out of adults[.]" The trial court further noted the Defendant "knew [the victim's] history . . . [and]

- 4 -

some of the issues she had growing up" and took advantage of those issues in initiating a sexual relationship with her.

As noted above, in support of its decision to require the Defendant to register as a sex offender, the trial court considered his risk of reoffending, and the facts and circumstances of the case. The trial court also noted that the Defendant had been initially charged with six counts of rape of a child,[2] which was reindicted charging six counts of aggravated statutory rape. The first indictment was dismissed and the Defendant pled to the superseding indictment. The court further noted that the victim testified that placing the Defendant on the sex offender registry would serve to deter him from similarly offending in the future. The Defendant timely appealed.

## II.  ANALYSIS

On appeal, the Defendant argues that the trial court erred by denying his request for judicial diversion and by ordering him to register as a sex offender. We will consider these issues in turn.

### A.  JUDICIAL DIVERSION

The Defendant first contends the trial court abused its discretion in denying his request for judicial diversion, arguing that the trial court made insufficient findings to support its conclusions and its weighing of the requisite factors. He further claims the record does not support the trial court's conclusions. The State responds that the Defendant has waived this claim for failing to comply with the rules of appellate procedure; in the alternative, the State argues that the trial court did not abuse its discretion in denying the Defendant's request for judicial diversion.

In order to qualify for a grant of judicial diversion, a criminal defendant (1) must plead guilty to or be found guilty of a misdemeanor or a Class C, D, or E felony; (2) must not be seeking diversion for a sexual offense enumerated in Tennessee Code Annotated section 40-35-313(a)(1)(B)(i)(e) or a Class A or B felony; and (3) must not have a prior conviction for a felony or a Class A misdemeanor. Tenn. Code Ann. § 40-35-313(a)(1)(B)(i). When a trial court grants a defendant's application for diversion, the defendant's "plea or verdict is held in abeyance and further proceedings are deferred under reasonable conditions during a probationary period established by the trial court."

---

[2] It appears the original indictment charged the offense of rape pursuant to Tennessee Code Annotated section 39-13-503 rather than rape of a child pursuant to Tennessee Code Annotated section 39-13-522 as stated by the trial court.

*Rodriguez v. State*, 437 S.W.3d 450, 455 (Tenn. 2014) (citing Tenn. Code Ann. § 40-35-313(a)(1)(A)).

A grant of diversion is not mandatory upon a defendant's qualification under the statute. *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014). Instead, Tennessee Code Annotated section 40-35-313(a)(1)(A) vests the trial court with discretion to grant or deny a qualifying defendant's request for diversion. *Id*. In determining whether to grant or deny diversion, the trial court must consider

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

*State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); and then *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993)). The trial court must also weigh each of these factors and place an explanation for its ruling on the record in support of its decision. *King*, 432 S.W.3d at 326. Though the trial court need not recite all the factors on the record, the record nevertheless must indicate that the trial court considered each factor and "identified the specific factors applicable to the case before it." *Id*. at 327.

Judicial diversion is not a sentence; rather, a "grant or denial of judicial diversion is a *decision* to either defer or impose a sentence." *Id*. at 324-25 (emphasis in original). Given this close relation to sentencing, the appropriate standard of review for a trial court's grant or denial of diversion is for an abuse of discretion as announced in *State v. Bise*. *King*, 432 S.W.3d at 325; *see also State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012) (holding that sentencing decisions imposed within the appropriate statutory range are reviewed on appeal for an abuse of discretion). Further, so long as the trial court considers the *Parker* and *Electroplating* factors, weighs them against each other, and places its findings on the record, we will presume that its decision is reasonable and will "uphold the grant or denial [of diversion] so long as there is any substantial evidence to support the trial court's decision." *King*, 432 S.W.3d at 326-27. However, when the trial court fails to consider the *Parker* and *Electroplating* factors or place its findings on the record, we will either review its decision *de novo* or, if more appropriate under the circumstances, remand the issue to the trial court for reconsideration. *Id*. at 328.

The Defendant identifies several aspects of the trial court's denial of judicial diversion as erroneous, including (1) its failure to consider certain evidence in the

Defendant's psychosexual risk assessment which would have provided further support for his amenability to correction; (2) its weighing of the various types of sexual intercourse the Defendant had with the victim in its consideration of the circumstances of the offense; (3) its conclusion that the Defendant presented a "moderate to high risk to reoffend; (4) its determination that the Defendant abused a position of trust; (5) its failure to "specifically address[]" how the information contained in the report of the Defendant's psychosexual risk assessment impacted its consideration of his social history and physical and mental health; and (6) its conclusion that the value of deterrence and the interests of justice weighed against granting judicial diversion. However, the Defendant nevertheless concedes, and we agree, that the trial court considered the *Parker* and *Electroplating* factors, weighed them against each other, and placed those findings on the record. The trial court specifically concluded that the Defendant's demonstrated amenability to correction and lack of a criminal record weighed in favor of granting diversion, while the circumstances of the offense, his social history, his physical and mental health, the value of deterrence, and the interests of justice weighed in favor of denying diversion. We will, therefore, consider the trial court's denial of judicial diversion as presumptively reasonable.

The Defendant claims that the trial court failed to consider certain evidence contained in the report of his psychosexual risk assessment which would have "corroborate[d]" his "high amenability to correction." However, the Defendant does not specifically identify this evidence beyond a general citation to the report's exhibit number and does not present an argument as to how it does not support the trial court's conclusion. The basic rules of this court require an appellant to present a brief which sets forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on." Tenn. R. App. P. 27(a)(7). The Defendant fails to comply with these rules by neglecting to specifically identify the evidence which he contends is contrary to the trial court's denial of judicial diversion, so this claim is waived. *See* Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); *see also State v. Bonds*, 502 S.W.3d 118, 144 (Tenn. Crim. App. 2016) (holding that this Court will "refuse to speculate about which pieces of evidence [an appellant] may find objectionable" where the appellant's brief "fails to specifically identify which evidence he deems improper" and makes only a "general complaint" about the evidence.). Simply, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010).

Waiver notwithstanding, substantial evidence supports the trial court's conclusion that the Defendant had "basically no criminal record," as his presentence report evinces only a singular prior episode of criminal conduct: a traffic violation from 2012, the fines for which the Defendant paid in full. Inasmuch as the Defendant alleges that the trial court afforded his lack of a criminal record or his amenability to correction insufficient weight, we note that a defendant's lack of a criminal record will rarely weigh heavily in a trial court's decision to grant or deny judicial diversion "[b]ecause no defendant eligible for pretrial diversion can have a significant criminal record." *State v McLean*, No. M2011-00916-CCA-R10-CD, 2012 WL 474591, at *9 (Tenn. Crim. App. Feb. 15, 2012).

Similarly, the Defendant claims that the trial court erred in its weighing of the various types of sexual intercourse he had with the victim. Again, the Defendant fails to cite any law in support of his one sentence argument that "inappropriate weight was placed on the court's findings as to the various types of intercourse," so it too is waived. Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b). Waiver notwithstanding, the trial court is required to consider the facts and circumstances surrounding a defendant's criminal offenses in determining whether to grant or deny a request for judicial diversion. *Electroplating*, 990 S.W.2d at 229 (citing *Parker*, 932 S.W.2d at 958; and then *Bonestel*, 871 S.W.2d at 168). The report of the Defendant's psychosexual risk assessment included a factual summary of the victim's forensic interview in which she averred that the Defendant penetrated her both vaginally and anally and forced her to perform oral sex on him. To the extent that the Defendant intends to argue that the trial court afforded disproportionate weight to the circumstances of the offense over the other *Parker* and *Electroplating* factors, we note that "the circumstances of the offense alone can support a denial of diversion." *State v. Sanchez*, No. M2023-00180-CCA-R3-CD, 2023 WL 8439926, at *3 (Tenn. Crim. App. Dec. 5, 2023), *no perm. app. filed*. Thus, substantial evidence exists to support the trial court's conclusions regarding the circumstances of the offense in this case.

The Defendant also claims that the trial court erred by concluding that he presented a "moderate to high risk" of reoffending based on its analysis of the report of his psychosexual risk assessment. He appears to claim that the trial court erred by failing to note that the assessment used multiple metrics to determine a defendant's risk of reoffending and that the results of these metrics did not uniformly agree that the Defendant presented a "moderate to high risk." Though the assessment indeed includes various metrics, they each placed the Defendant at an "average," "moderate," or "moderate high" level of risk for reoffending. Further, in its summary, the assessor concluded that the Defendant's "[r]isk from sexual deviance alone is in the moderate high range," though it noted that this was not the sole basis for determining a particular defendant's risk to reoffend. Accordingly, regardless of the metric the trial court relied upon, substantial evidence exists in the record to support its conclusion.

The Defendant also appears to argue that the trial court erred in denying judicial diversion because it misapplied enhancement factor fourteen, that the defendant abused a position of public or private trust, in finding that the Defendant had taken advantage of the victim's vulnerability and "abandonment issues" by initiating a sexual relationship with her. Tenn. Code Ann. § 40-35-114(14). However, the trial court did not identify any enhancement or mitigating factors which it considered in denying judicial diversion. To the contrary, its statement that the Defendant abused a position of trust because "he was kind of an uncle by marriage and had an opportunity to take advantage of" the victim was made in the context of its larger discussion of the characteristics and nature of the offense. Even assuming, *arguendo*, that the trial court intended to use the Defendant's "abuse of a position of trust" as an enhancement factor, we note that "when presented with an agreed upon sentence, the trial court's application of enhancing or mitigating sentencing factor language . . . has little legal significance on the question of alternative sentencing." *State v. Albanese*, No. E2024-00744-CCA-R3-CD, 2025 WL 1165895, at *5 (Tenn. Crim. App. Apr. 22, 2025) (citing *State v. Donton*, No. E2021-00721-CCA-R3-CD, 2022 WL 3905088, at *5 (Tenn. Crim. App. Aug. 31, 2022), *no perm. app. yet filed*. When viewed in context, we believe that the trial court intended to summarize the offenses based on the evidence before it; namely, that the Defendant was related to the victim through his marriage to her aunt, that he was aware of her age and "abandonment issues," and that he nevertheless initiated a sexual relationship with her in spite of his status as an adult family member. Further, as the State noted in its summary at the Defendant's guilty plea submission hearing and as described in the report of the Defendant's psychosexual risk assessment, the majority of the offenses in this case occurred primarily when the victim visited the Defendant at his home. Thus, substantial evidence exists to support the trial court's conclusion.

The Defendant further posits that the trial court insufficiently explained its conclusions that his social history and physical and mental health weighed against a grant of judicial diversion. At the Defendant's sentencing hearing, the trial court identified each of the *Parker* and *Electroplating* factors and stated the weight it had afforded each. The trial court stated,

> The [D]efendant's social history. Again, I think that weighs against the granting of diversion based upon the psychosexual assessment that I've read.
>
> The [D]efendant's physical and mental health. Again, I've read the psychosexual assessment and it concerns the [c]ourt tremendously that he's assessed at a moderate to high risk to reoffend.

- 9 -

The Defendant first contends that his application for diversion, the evidence he presented at his sentencing hearing, and the report from his psychosexual risk assessment are contrary to the trial court's conclusion. However, he again neglects to specifically identify what evidence he believes the trial court should have considered nor does he present an argument as to how that evidence contradicts the trial court's conclusion, so this argument is waived. Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b); *Bonds*, 502 S.W.3d at 144. Waiver notwithstanding, we conclude that the context in which the trial court analyzed the Defendant's social history and physical and mental health indicates that it heavily relied upon the psychosexual risk assessment's conclusion that the Defendant presented a "moderate to high risk" to reoffend. Though the trial court's analysis of the Defendant's social history was perhaps perfunctory, the Defendant has nevertheless failed to meet his burden of proof that the record does not support the trial court's conclusion.

Similarly, the Defendant claims that the trial court incorrectly considered how the value of deterrence and the interests of justice supported the denial of judicial diversion, contending that "the trial court made findings related to determinations not specifically supported by the record." However, the Defendant does not identify what these findings are, nor does he cite to the record or any law in support of his assignment of error, so this claim is also waived. Tenn. R. App. P. 27(a)(7); Tenn. R. Ct. Crim. App. 10(b); *Bonds*, 502 S.W.3d at 144. Waiver notwithstanding, we are satisfied that the trial court sufficiently considered these factors. In its analysis of the value of deterrence and the interests of justice, the trial court emphasized that "this is not the type of behavior that we expect of adults" towards "[fifteen] year old females[,] especially [those] who are dealing with abandonment issues." The trial court further noted that it did not "want a situation where this person who has been evaluated and assessment has been done to say he's a moderate to high risk to reoffend be granted diversion and perhaps go out and reoffend again." The trial court also considered the Defendant's family life, the victim's testimony, and Defendant's employment in its analysis of this factor, and we conclude that substantial evidence exists in the record to support the trial court's conclusion.

Accordingly, we discern no abuse of discretion in the trial court's denial of judicial diversion.

## B.    SEX OFFENDER REGISTRATION

The Defendant also argues that the trial court erred by ordering him to register as a sex offender. The State responds that this issue is waived due to inadequate briefing.

On this issue, we agree with the State that the Defendant has waived appellate review. The Defendant's argument on this issue consists of two sentences in which he "reincorporates [his] discussions and arguments" regarding the trial court's denial of

judicial diversion and contends that the trial court's conclusion was "based upon weighted factors and determinations not supported by substantial evidence in the record." The Defendant again cites to no portion of the record, does not present a statement of the applicable law or standard of review, and does not reference any statute or caselaw in support of his argument. The basic rules of appellate procedure and of this court require more. *See* Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). Accordingly, this issue is waived. *See State v. Blackwell*, No. M2016-01063-CCA-R3-CD, 2017 WL 2772688, at *13 (Tenn. Crim. App. June 26, 2017) (finding that a defendant's failure to cite sufficient legal authority and his argument that he "incorporates by reference as if fully recited in this sub-section the previous arguments he has made" was inappropriate and constituted waiver of appellate review due to inadequate briefing).

Waiver notwithstanding, the trial court analyzed the appropriate factors in requiring the Defendant to register as a sex offender, including the facts and circumstances surrounding the offense. *See* Tenn. Code Ann. § 39-13-506(d)(2)(B); *State v. Broadrick*, 648 S.W.3d 158, 170 (Tenn. Crim. App. 2018). As we have already concluded above that the record supports the trial court's findings of fact and conclusions of law, we discern no error in the trial court's order.

### III.   CONCLUSION

Following our review of the record and based on the foregoing analysis, we affirm the judgments of the trial court.

s/ *Steven W. Sword*
STEVEN W. SWORD, JUDGE

- 11 -